UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------------

PAUL REED,

   Petitioner,

vs.

EDWARD SHELDON, Warden,

   Respondent.

Case No. 5:17-cv-2672

OPINION & ORDER
[Resolving Docs. 1, 20]

------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Petitioner Paul Reed petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2254.[1]

For the following reasons, the Court **OVERRULES** Petitioner's objections, **ADOPTS** the holding of the R&R, and **DENIES** Petitioner's request for a writ of habeas corpus.

I. Background

On April 26, 2014, Petitioner Reed and his girlfriend, Tiffany Powell, plotted to lure James Harris, the father of Powell's children, to a residence. After Harris came to the residence, he was beaten to death.[2]

At the time of the murder victim James Harris exercised custody of his and Powell's children.

To carry out her effort to get Harris to the house, Powell contacted a friend, Ro'ceeda Kelly, to help lure Harris to the home. A protection order forbade Harris's presence at the home and a protection order violation would arguably help Powell to

---

[1] Doc. 1.
[2] The facts are those found by the appellate court in *State v. Reed*, 9th Dist. Summit No. 27755, 27811, 2016-Ohio-5123. Reed must rebut these facts by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

regain custody.

Reed drove Powell and Kelly to Harris's residence. Harris was not home, but Kelly told Harris's acquaintance at the home that she wanted to sell Harris a vehicle. Harris bought and sold used cars. Later Reed called Harris directly using a phone supplied by Reed and Powell. When Harris returned her call, Kelly told Harris to meet her at the Powell residence.

Later that evening, Harris arrived at the residence with his son, who remained in the car. Kelly led Harris to the back entrance of the house and down the stairs to the basement. When Harris stepped from the stairwell into the basement Reed hit Harris in the face with a pole. Kelly ran out of the house.

When police arrived at the scene, they discovered Harris's body. There was a gun near Harris's body and a detached magazine close by. The magazine had Harris's DNA on it. Both Kelly and Harris's son testified that they did not see Harris with a gun. Reed's hands had Harris's DNA on them.

Harris's autopsy found blunt force trauma caused Harris's death. The Medical Examiner concluded that someone likely kneeled on Harris's back and beat his head into the ground. Harris did not have any defensive wounds consistent with mutual combat.

On February 27, 2015, an Ohio state jury found Reed guilty of one count of murder and one count of complicity to commit murder.[3] The state court sentenced Reed to life imprisonment with no parole for fifteen years.[4]

On April 13, 2015, Reed appealed his conviction in the Ohio Court of Appeals.[5]

---

[3] Doc. 9-1 at 12.
[4] *Id.* at 13.
[5] *Id.* at 14.

Case No. 5:17-cv-2672
Gwin, J.

The state appellate court affirmed.[6]

After the appellate court's decision, Petitioner Reed did not timely appeal to the Ohio Supreme Court. After missing the time deadline to appeal to the Ohio Supreme Court, on October 14, 2016, Reed filed a *pro se* motion for leave to file a delayed appeal to the Ohio Supreme Court.[7] On December 14, 2016, the Ohio Supreme Court denied his motion.[8]

Reed now brings a habeas petition under 28 U.S.C. 2254.[9] Magistrate Judge Parker issued a report and recommendation ("R&R") recommending that the Court deny Reed's petition.[10] Reed objects.[11]

## II. Discussion

Because Petitioner has objected, the Court reviews the R&R *de novo*.[12]

To succeed with his petition, Reed must show that his conviction resulted from an unreasonable application of clearly established federal law or an unreasonable factual determination.[13] This standard is challenging due to the highly deferential standard this Court must give to state-court rulings.[14]

### A. All of Petitioner's Claims Are Procedurally Defaulted.

A petitioner procedurally defaults a claim by failing to "comply with state procedural rules."[15] Reed properly appealed all his habeas grounds to the Ohio Court of

---

[6] *Id.* at 60.
[7] *Id.* at 76.
[8] *Id.* at 94.
[9] Doc. 1.
[10] Doc. 14.
[11] Doc. 20.
[12] 28 U.S.C. § 636(b)(1).
[13] 28 U.S.C. § 2254(d).
[14] *Bell v. Cone*, 543 U.S. 447, 455 (2005).
[15] *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

Case No. 5:17-cv-2672
Gwin, J.

Appeals but he procedurally defaulted his claims by failing to timely appeal the appellate court's decision to the Ohio Supreme Court.

In deciding whether Reed's failure to comply with state procedural rules should be excused, the Court applies the four-part *Maupin* test.

Under *Maupin*, the Court considers: (1) whether there is a state procedural rule that Petitioner Reed failed to comply with; (2) whether the state court enforced the rule in Reed's case; (3) whether the rule is an adequate and independent state ground for the state to foreclose review of a federal constitutional claim; and (4) if Reed did not comply with the state procedural rule and the rule was an adequate and independent state ground, whether Reed can show cause for failure to follow the rule and resulting prejudice.[16]

Reed failed to comply with the Ohio Supreme Court's filing deadline, a procedural rule.[17] The Ohio Supreme Court enforced the rule by denying his motion for a delayed appeal. The Sixth Circuit has held that a denial by the Ohio Supreme Court is "an adequate ground to foreclose federal habeas review."[18]

To overcome the default, Petitioner Reed must show cause and prejudice.

### a. Petitioner Fails to Show Cause and Prejudice.

Petitioner's objections to the R&R recite the same arguments for excusing his default as Reed briefed in Petitioner's Traverse—Reed says his appellate counsel did not inform him that his appeal was denied until eleven days afterward and did not notify him of the

---

[16] *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).
[17] *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (finding that the denial of a delayed appeal motion is a procedural ruling).
[18] *Smith v. State of Ohio Dept. of Rehabilitation and Corrections*, 463 F.3d 426, 431-32 (6th Cir. 2006).

Ohio Supreme Court's filing deadline. He also says that his delay was caused in part by the difficulties of preparing his appeal while incarcerated.

As an initial matter, the difficulties of *pro se* status cannot provide cause to overcome default.[19]

Additionally, the Sixth Circuit applies a rebuttable presumption in cases where defendants claim counsel failed to notify them of an appeal's failure:

> "[I]f the period of time between when the defendant learned of the decision and when he or she attempted to appeal the decision is *greater* than the period allotted by state law for the timely filing of an appeal—here, forty-five days--the defendant fails to demonstrate that he or she would have timely appealed the decision but for the counsel's deficient failure to notify the defendant of the decision."[20]

In this circumstance, there was a sixty-seven-day window between receiving notice of the Ohio Court of Appeals denial and Petitioner's filing his request for a delayed appeal.[21] This clearly exceeds the allotted forty-five day filing window. That Petitioner was ignorant of the forty-five-day rule is not an excuse.[22]

Petitioner cannot show cause for his delay. In its absence, the Court need not consider whether Petitioner has shown prejudice.[23]

Petitioner has procedurally defaulted all of his claims.

### b. Petitioner Fails to Demonstrate Actual Innocence.

---

[19] *Bonilla*, 370 F.3d at 498 (finding that *inter alia pro se* status, ignorance of procedural requirements, and limited time in prison law library were not cause to excuse procedural default); *Dew v. Kelly*, No. 4:11CV2486, 2019 WL 2304678, at *9 (N.D. Ohio May 30, 2019) ("Petitioner's excuse was that his incarcerated status kept him from being able to obtain necessary affidavits and other evidence within Rule 26(B)(1)'s time period. This is not a sufficient basis for finding cause.").
[20] *Smith*, 463 F.3d at 435.
[21] Petitioner Reed claims that his appellate counsel notified him of the denial on August 8, 2016. He filed his motion for a delayed appeal on October 14, 2016. Doc. 9-1 at 76.
[22] *Kimble v. Gansheimer*, 4:08CV01048, 2009 WL 4676959, at *11 (N.D. Ohio Dec. 4, 2009).
[23] *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000).

Petitioner may overcome the default of any of his claims by showing that there will be a fundamental miscarriage of justice if the claims are not considered. "A fundamental miscarriage of justice results from the conviction of one who is actually innocent."[24] Actual innocence means "factual innocence, not mere legal insufficiency."[25]

To overcome the default by actual innocence, Reed must show that a reasonable juror could not have found him guilty if the juror had benefited from the facts presented in the new evidence.[26]

With his habeas petition and affidavit, Petitioner Reed set forth his version of the death events.[27] Typically, habeas review is limited to the record presented to the state court.[28] However, the Court may consider extra-record evidence when considering whether Reed meets the actual innocence standard, especially within the context of excusing a procedural default.[29] Additionally, even though the facts that Reed submitted in his affidavit are not new in the sense that Reed could have testified to them at trial, the fact that they were not presented at the trial makes them new for the purposes of the actual innocence deliberation.[30]

In his affidavit, Reed argues that he was doing laundry in the basement when he saw a hand with a gun enter the basement from the stairs. Reed says he thought a home

---

[24] *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (internal quotation and citation omitted).
[25] *Bousley v. United States*, 523 U.S. 614, 623 (1998).
[26] *Jells v. Mitchell*, 538 F.3d 478, 507 (6th Cir. 2008).
[27] As noted in the R&R, the Court may consider this extra-record evidence in considering whether Reed meets the actual innocence standard for overcoming a procedural default. *Vinson v. Mackie*, No. 14-cv-14542, 2016 WL 6595021, at *1 (E.D. Mich. Nov. 8, 2016).
[28] *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).
[29] *Fortson v. Eppinger*, No. 1:15 CV 2078, 2016 WL 11259032, at *18 (N.D. Ohio Nov. 21, 2016), *adopted by* 2017 WL 603086 (Feb. 15, 2017) (collecting cases in support of use of extra-record evidence for actual innocence analysis of procedural default).
[30] *Souter v. Jones*, 395 F.3d 577, 596 n. 9 (6th Cir. 2005).

invasion was occurring. Petitioner Reed claims he became defensive and wrestled Harris to the floor to try to get the gun away from him. Reed claims the two men tussled and claims that victim Harris fell to the floor and struck his head.[31] Reed argues that Harris's death was self-defense.

Even with this evidence in mind, however, Reed is unable to show that a reasonable juror could not have found him guilty if he or she had had the benefit of considering this evidence. As recounted above, the trial testimony painted a different picture of why Harris was at the residence. There was also testimony that Reed struck Harris with a pipe as soon as he entered the basement. Two witnesses also testified that they did not see Harris with a gun.

Petitioner has not demonstrated that he is actually innocent and therefore cannot overcome his defaults.

## B. There Was Sufficient Evidence to Support Reed's Conviction.

Reed has defaulted all of his claims. Nonetheless, the Court will also consider Petitioner's objections to the R&R's merits analysis.

First, Reed argues that there was insufficient evidence to support his murder and complicity to commit murder convictions.

The Court must deny the insufficient evidence claim if, after viewing the evidence in a manner favorable to the prosecution, it appears that a rational trier of fact could have

---

[31] Doc. 1-2 at 2.

Case No. 5:17-cv-2672
Gwin, J.

found the elements of the crime beyond a reasonable doubt.[32] "This requires successful challengers to meet a very high threshold."[33]

Reed objects to the Magistrate Judge's finding of sufficient evidence by arguing that because the jury initially returned inconsistent verdict forms also finding Reed guilty of involuntary manslaughter, the evidence was necessarily insufficient to find him guilty of murder beyond a reasonable doubt. In fact, the jury verdict forms, were inconsequential to whether or not the State presented sufficient evidence of Reed's guilt.[34]

The Court agrees with the Magistrate Judge and the state appellate court conclusions that there was sufficient evidence to convict Petitioner Reed. Reed does not point to any specific element of the crimes that the state failed to prove at trial. Even so, the Court is satisfied that the prosecution put on a case that could allow a rational trier of fact to find Reed guilty beyond a reasonable doubt.

Reed's sufficiency of the evidence claim is denied.

### C. Reed's Self-Defense Claim Fails.

Reed next claims that the state trial court should have instructed the jury on self-defense.

As a preliminary matter, Reed's claim is not cognizable on habeas review given that the Ohio appellate relied exclusively on state law in deciding whether denying the self

---

[32] *Apanovitch v. Houk*, 466 F.3d 460, 488 (6th Cir. 2006).
[33] *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).
[34] Reed also raises for the first time in his objections a manifest weight of the evidence argument. As new claims may not be properly raised in objections to the R&R, the Court does not address this claim.

defense instruction was an error.[35] As such, the claim may only succeed if a fundamental violation of Reed's due process rights has occurred.

According to the Sixth Circuit, it is established federal law that "failure to instruct a jury on self-defense when the instruction has been requested and there is sufficient evidence to support such a charge violates a criminal defendant's rights under the due process clause."[36] In conducting this analysis, a "presumption of correctness attaches to all underlying factual determinations made by a state court."[37]

As the state appellate court noted, "[s]elf-defense is an affirmative defense and . . . the defendant has the burden of proving it by a preponderance of the evidence."[38] Reed did not offer any witnesses at trial in support of his theory of self-defense. In contrast, the prosecution put forth witnesses that testified to Reed's and his coconspirator's luring the victim to his home and then hitting the victim first in the head with a pole. The evidence did not show any victim defensive wounds and Harris's injuries were consistent with being beaten from behind. The trial court referred to the self-defense theory as "at best . . . speculation."[39]

In light of the evidence presented at trial, the Court cannot say that the trial court's conclusion that Reed had not his burden of proof for the self-defense instruction was unreasonable and in violation of Reed's due process rights.

The Court denies Reed's self-defense instruction claim.

---

[35] *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).
[36] *Taylor v. Withrow*, 288 F.3d 846, 851 (6th Cir. 2002).
[37] *Melchoir v. Jago,* 723 F.2d 486, 493 (6th Cir. 1983).
[38] Doc. 9-1 at 64.
[39] Doc. 9-8 at 100.

Case No. 5:17-cv-2672
Gwin, J.

### D. The Court Also Denies Reed's Cumulative Errors Claim.

Finally, Reed says that the trial court's cumulative errors deprived him of a fair trial. Specifically, Reed complains that the jury initially returned with an inconsistent verdict and was instructed to continue deliberations until it consistently completed the verdict forms, once again, that the jury was not given the self-defense instruction.[40]

The Court has already determined that there was no error in the self-defense instruction.

As to the inconsistent verdict, Reed has not stated what clearly established federal law was violated by the jury's initially returning the inconsistent verdict forms. He has also not presented the Court with any argument as to what unreasonable determination the state trial court made in light of the facts presented.

The jury filled out two sets of verdict forms, and both indicated that the jury found Reed guilty of murder.[41] The Court's acceptance of the jury's verdict was not in error.

As Reed has not identified any errors committed by the trial court, his cumulative errors claim is also dismissed.

### Conclusion

For the foregoing reasons, the Court **OVERRULES** Petitioner's objections, **ADOPTS** the holding of the R&R, and **DENIES** Petitioner's request for a writ of habeas corpus. There is no basis upon which to issue a certificate of appealability.[42]

---

[40] Doc. 13 at 28.
[41] Doc. 9-9 at 3, 14.
[42] 28 U.S.C. 2253(c); Fed. R. App. P. 22(b).

Case No. 5:17-cv-2672
Gwin, J.

    IT IS SO ORDERED.


Dated: January 16, 2020             *s/      James S. Gwin*
                                                                                   JAMES S. GWIN
                                                                                   UNITED STATES DISTRICT JUDGE